IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BRIAN MARSHALL,                          )
                                         )
      Plaintiff,                         )
                                         )
       v.                               )        CASE NO. 2:23-cv-469-JTA
                                         )          (WO)
MARTIN J. O'MALLEY,                      )
Commissioner of Social Security,         )
                                         )
      Defendant.                         )

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), the claimant, Brian Christopher Marshall ("Marshall"), brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[1] The Commissioner denied Marshall's claim for a period of disability and Disability Insurance Benefits ("DIB"). The Court construes Marshall's brief in support of his Complaint (Doc. No. 9) as a motion for summary judgment and the Commissioner's brief in opposition to the Complaint as a motion for summary judgment (Doc. No. 14). The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 10, 11.)

After careful scrutiny of the record and the motions submitted by the parties, the Court finds that Marshall's motion for summary judgment is due to be DENIED, the

---

[1] Document numbers as they appear on the docket sheet are designated as "Doc. No."

Commissioner's motion for summary judgment is due to be GRANTED, and the decision of the Commissioner is due to be AFFIRMED.

## I.  PROCEDURAL HISTORY AND FACTS

Marshall is an adult[2] male who is college educated and previously worked as an environmental engineer or examiner. (R. 18, 46, 47, 53, 232.)[3] He alleged a disability onset date of June 9, 2020, due to bipolar disorder and high cholesterol. (R. 14, 231.)

On October 21, 2020, Marshall filed an application for a period of disability and DIB under Title II (42 U.S.C. §§ 401, *et seq*.) of the Social Security Act. (R. 184-185.) The application was denied initially and on reconsideration. (R. 10.) Following an administrative hearing, the Administrative Law Judge ("ALJ") denied Marshall's request for benefits in a decision dated January 26, 2023. (R. 10-23.) Marshall requested review by the Appeals Council, and it denied review. (R. 1-6.) Thus, the hearing decision became the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted) ("Where an ALJ denies benefits and the Appeals Council denies review, [the court] review[s] the ALJ's decision as the Commissioner's final decision." (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (internal quotations and alterations omitted)).

---

[2] He was 49 years old at the time of the administrative hearing. (R. 18, 45.)

[3] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case. (*See* Doc. No. 6.)

On August 8, 2023, Marshall filed this action seeking review of the Commissioner's final decision. (Doc. No. 1.) The parties have briefed their respective positions. (Docs. No. 9, 14.) This matter is ripe for review.

## II.    STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). The court "'must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence.'" *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019). "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Mitchell v. Comm'r*, *Soc. Sec. Admin.,* 771 F. 3d 780, 782 (11th Cir. 2014); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210. However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260

(11th Cir. 2007); *Washington v. Comm'r of Soc. Sec. Admin.*, 906 F.3d 1353, 1358 (11th Cir. 2018).

Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The district court may remand a case to the Commissioner for a rehearing if the court finds "either . . . the decision is not supported by substantial evidence, or . . . the Commissioner or the ALJ incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

### III.   STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security DIB must prove that he is disabled. *See* 20 C.F.R. § 404.1505. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The evaluation is made at the hearing conducted by an ALJ. *See Washington*, 906 F.3d at 1359. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). If the ALJ finds that the claimant is engaged in

substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b).

Second, the ALJ must determine whether the claimant has a medically determinable

impairment or a combination of impairments that significantly limit the claimant's ability

to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the

claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant

meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart

P, Appendix 1. If such criteria are met, then the claimant is declared disabled. 20 C.F.R. §

404.1520(d).

If the claimant has failed to establish that he is disabled at the third step, the ALJ

may still find disability under the next two steps of the analysis. At the fourth step, the ALJ

must determine the claimant's residual functional capacity ("RFC"), which refers to the

claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). The ALJ must

determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. §

404.1520(f). If it is determined that the claimant is capable of performing past relevant

work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds that

the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth

and final step. 20 C.F.R. § 404.1520(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to

perform any other relevant work corresponding with his RFC, age, education, and work

experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to

the ALJ in proving the existence of a significant number of jobs in the national economy

that the claimant can perform given his RFC, age, education, and work experience. 20

C.F.R. §§ 404.1520(g), 404.1560(c). *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) ("The burden then shifts to the Secretary to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform."). The ALJ may use testimony from a vocational expert ("VE") "to determine whether the claimant has the ability to adjust to other work in the national economy" that he can perform.[4] *Bacon v. Comm'r of Soc. Sec.*, 861 F. App'x 315, 317 (11th Cir. 2021) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); 20 C.F.R. § 404.1566(e)). If the ALJ determines the claimant can perform other jobs in the national economy, "then the burden shifts back to the claimant to show that [he] is unable to perform the jobs suggested by the [ALJ.]" *Id.* (citing *Washington*, 906 F.3d at 1359). *See Hale*, 831 F.2d at 1011 ("Finally, the burden shifts back to the claimant to prove [he] is unable to perform the jobs suggested by the Secretary.") (citations omitted).

## IV.   ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ found that Marshall last met the insured status requirements of the Social Security Act on December 31, 2024, and he had not engaged in substantial gainful activity since the alleged onset date. (R. 12.) The ALJ determined that Marshall suffers from the following severe impairments that significantly limit his ability to perform basic work activities: bipolar

---

[4] "A VE 'is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments.'" *Bacon,* 861 F. App'x at 317 (citing *Phillips*, 357 F.3d at 1240). "When the ALJ uses a [VE], the ALJ will pose hypothetical question(s) to the [VE] to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

disorder, generalized anxiety disorder and substance use disorder. (R. 12.) The ALJ also considered the record evidence concerning Marshall's other impairments of hyperlipidemia, heart disease and obesity, but found them to be non-severe impairments. (R. 17.) The ALJ concluded that Marshall's impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart B, Appendix 1. (R. 12.)

After consideration of the entire record, the ALJ determined that Marshall retains the RFC to perform a full range of work at all exertional levels, but with certain nonexertional limitations. (R. 14.) The ALJ found the following limitations are applicable to Marshall:

> [He] can only perform simple, routine, and repetitive tasks, but not at a production rate pace where the pace of one's work affects, or is affected, by the pace of other's [sic] work or by any externally controlled system or process. [He] can only respond appropriately to occasional changes in a routing [sic] work setting. [He] can occasionally interact with coworkers and the public in work situations.

(R. 14.) In accordance with this RFC, the ALJ found Marshall was unable to perform his past relevant work as an examiner. (R. 18.) Because the VE testified that Marshall's "skilled past relevant work exceeded his current residual functional capacity for unskilled work[,]" the ALJ determined that Marshall was unable to perform his past relevant work "as actually or generally performed." (R. 18.) Relying on testimony from the VE, the ALJ further determined that Marshall was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, specifically, the jobs of sorter, inspector-packer and router. (R. 18-19.) The ALJ concluded that Marshall has not

been under a disability from the alleged onset date of disability through the date of the hearing decision. (R. 19.) Hence, the ALJ also concluded that Marshall is not disabled under sections 216(i) and 223(d) of the Social Security Act. (*Id*.)

## V.   DISCUSSION

Marshall presents two arguments in this appeal. First, he argues the ALJ failed to incorporate the prior administrative medical findings in the RFC. (Doc. No. 9 at 2, 6.) Second, he argues the ALJ did not properly evaluate the supportability of the opinion of Kale E. Kirkland, Ph.D., licensed psychologist, and failed to obtain Dr. Kirkland's medical records. (*Id*.)

The Court addresses each argument in turn.

A.   Relevant Law

The regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The regulations also provide:

> A medical opinion is a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [the claimant] [has] one or more impairment-related limitations or restrictions in the following abilities:
>
> (i) [His] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

8

(ii) [His] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii) [His] ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv) [His] ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam); *see also* Social Security Ruling 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources). These opinions are referred to as "prior administrative medical findings." *See* 20 C.F.R. § 404.1513(a)(5).[5]

---

[5] According to the regulations,

A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 404.900) in your current claim based on their review of the evidence in your case record, such as:

(i) The existence and severity of your impairment(s);
(ii) The existence and severity of your symptoms;
(iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1;
(iv) Your residual functional capacity;
(v) Whether your impairment(s) meets the duration requirement; and

The regulations direct the ALJ to "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

> When a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors [the ALJ] considers when … evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)….

20 C.F.R. § 404.1520c(a). "A medical source's opinion that a claimant is 'disabled' or 'unable to work' is not dispositive of a disability claim because the disability determination is reserved to an ALJ acting on behalf of the Commissioner." *Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *3 (11th Cir. 2022) (citing *Walker v. Comm'r of Soc. Sec.*, 987 F.3d 1333, 1339 (11th Cir. 2021)).

The regulations also direct the ALJ to evaluate the persuasiveness of each medical source using the following five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization of the medical source, and (5) other factors. 20 C.F.R. § 404.1520c(1)(c); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 897-98 (11th Cir. 2022). The ALJ must explain in his decision how he considered the factors of supportability

---

(vi) How failure to follow prescribed treatment (see § 404.1530) and drug addiction and alcoholism (see § 404.1535) relate to your claim.

20 C.F.R. § 404.1513.

and consistency in his determination of overall persuasiveness of each source. 20 C.F.R. § 404.1520c(b)(2) ("[S]upportability ... and consistency ... are [t]he most important factors we consider when we determine how persuasive we find a medical source's opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision."). "When weighing medical opinion evidence, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether an opinion is well-supported, and whether an opinion is consistent with the record." *Wines v. Acting Comm'r of Soc. Sec.*, No. 21-13606, 2022 WL 2526586, at *3 (11th Cir. 2022).

B.      Assessment of Prior Administrative Medical Findings

Marshall contends the ALJ mischaracterized the prior administrative medical findings of two state agency psychological consultants: Byron Pack, Psy.D.; and Donald Hinton, Ph.D. (Doc. No. 9 at 10.) Marshall argues "[e]ven though the opinion of Dr. Hinton contained different limitations than the opinion of Dr. Pack, the ALJ arbitrarily pulled various portions from both opinions and jumbled them together as if these were unanimous opinions from both doctors." (*Id*.) Marshall also contends the ALJ failed to account for the work limitations contained in the opinion of Dr. Hinton in the ALJ's RFC. (*Id*.)

The Commissioner responds that substantial evidence supports the ALJ's evaluation of the prior administrative medical findings. (Doc. No. 14 at 4.)

At the initial level of the disability determination, Dr. Pack completed a Psychiatric Review Technique evaluation. (R. 62-64.) He opined that Marshall did not satisfy the

criteria for Listings 12.04, 12.06 and 12.08. (R. 62.) He also opined that Marshall had a mild limitation in his ability to understand, remember or apply information; a mild limitation in his ability to adapt or manage himself; and moderate limitations in his ability to interact with others and concentrate, persist or maintain pace. (R. 62-63.) Dr. Pack stated, "[t]he overall evidence indicates that [Marshall] is capable of simple and minimally demanding employment as the extent of impairment does not meet or equal any listing." (R. 63.) According to Dr. Pack, "[b]ased on totality of evidence in file, input about [Marshall] was partially consistent. [Marshall] appears to be mildly to moderately limited by mental impairment …." (R. 63.)

Dr. Pack also completed a Mental Residual Functional Capacity evaluation. (R. 64-66.) He opined that Marshall had understanding and memory limitations, which were moderately limited or not significantly limited. (R. 65.) He also opined that Marshall's mental impairments "reflect mild to moderate limitations" and Marshall is "capable of understanding and retaining simple instructions." (R. 65.) Dr. Pack opined that Marshall had sustained concentration and persistence limitations, which were moderately limited or not significantly limited, and he had "sufficient ability to sustain [concentration and consistent pace] for extending period[s], and should be able to complete simple tasks at the appropriate pace, and sustain this level across days and weeks." (R. 65.) Dr. Pack further opined that Marshall had social interaction limitations, which were moderately limited or not significantly limited, and explained that Marshall "can cooperate on simple, routine tasks and transactions[]"; "is able to relate appropriately in spite of impairments[]"; "may show limited tolerance for frequent, recurrent contact with the general public, and may

function best at tasks with limited social demands." (R. 65.) Finally, Dr. Pack opined that Marshall had moderately limited to not significantly limited adaptation limitations as he "is capable of adapting adequately to changes and demands of simple tasks." (R. 66.) Dr. Pack explained,

> [Marshall] can understand, retain, and carry out simple instructions. [He] can consistently and usefully perform routine tasks on a sustained basis, with minimal (normal) supervision, and can cooperate effectively with public and co-workers in completing simple tasks and transactions. [He] is able to understand, remember and carry out simple instructions. [He] can make simple decisions and do routine tasks.

(R. 66.) Dr. Pack found that Marshall was "[c]apable of understanding, remembering and carrying out simple instructions over an eight-hour workday with routine breaks[]"; that Marshall's "contact with co-workers, supervisors, and [the] general public should be casual and non-confrontational[,]" and that "changes in the work place should be introduced slowly." (R. 66.)

Dr. Hinton completed a Psychiatric Review Technique evaluation at the reconsideration level of the disability determination. (R. 71-73.) Like Dr. Pack, Dr. Hinton opined that Marshall did not satisfy the criteria for Listings 12.04, 12.06 and 12.08. (R. 71.) However, Dr. Hinton opined that Marshall had moderate limitations in his ability to understand, remember or apply information; his ability to adapt or manage himself; his ability to interact with others; and his ability to concentrate, persist or maintain pace. (R. 72.) Dr. Hinton stated that the objective evidence does not support the severity of Marshall's limitations "to prevent work abilities[.]" (R. 73.)

Dr. Hinton also completed a Mental Residual Functional Capacity evaluation. (R. 73-76.) Similar to Dr. Pack, Dr. Hinton opined that Marshall had understanding and memory limitations, which were moderately limited or not significantly limited. (R. 74.) He also opined that Marshall can "understand, remember, and carry out 2-3 step instructions and simple tasks, but not those more detailed or complex." (R. 74.) Like Dr. Pack, Dr. Hinton opined that Marshall had sustained concentration and persistence limitations, which were moderately limited or not significantly limited. (R. 74.) Dr. Hinton found that Marshall "can maintain attention for at least 2 hours out of an 8[-]hour work[ ]day, and can complete simple tasks without the need for special supervision of more than usual and customary rest breaks." (R. 74.) Dr. Hinton further opined that Marshall had social interaction limitations, which were moderately limited or not significantly limited, and explained that Marshall "would not be able to perform work which requires frequent interaction with the general public[;] … can tolerate non-intense interaction with coworkers and supervisors, and the public[;] … [and] [c]orrective action from supervisors should be offered in a simple and supportive manner." (R. 74.) Finally, Dr. Hinton opined that Marshall had moderately limited to not significantly limited adaptation limitations. (R. 75.) Dr. Hinton explained that Marshall "can adjust to small changes with full explanations and gradual implementation[,]" and opined that "[w]ork setting changes should be minimal, gradual, and fully explained." (R. 75.) Dr. Hinton further explained, "At the initial level, [Marshall] was given an Unskilled [Mental Residual Functional Capacity]. This is consistent [with] the objective evidence. Therefore, [Marshall] is given an Unskilled [Mental Residual Functional Capacity] at the reconsideration level as well." (R. 75.)

14

In the hearing decision, the ALJ found the prior administrative medical findings generally persuasive. (R. 18.) The ALJ thoroughly addressed these findings, stating:

> The undersigned has fully considered the medical opinions and prior administrative medical findings as follows: State Agency Medical Consultants, Psychologist Byron Pack and Donald Hinton, Ph.D. (on reconsideration) opined that [Marshall's] mental impairments only posed mild to moderate limitations. Psychologist Pack and Dr. Hinton essentially opined that [Marshall] was capable of understanding and retaining simple, two to three step instructions, and he had sufficient ability to sustain concentration, persistence, and pace for at least two hours out of an eight-workday. They opined that [Marshall] should be able to complete simple tasks at an appropriate pace. Psychologist Pack and Dr. Hinton further opined that contact with coworkers, supervisors, and the general public should be causal and non-confrontational, and changes in the workplace should be introduced slowly (Exhibits 2A and 3A). As state agency medical consultants, Psychologist Pack and Dr. Hinton have substantial experience applying Social Security disability law and policy, and their opinion is supported and consistent with the evidence at the time of their review. More specifically, their opinion is generally consistent with the treatment records from River Region. As stated above, [Marshall's] examinations showed his thought process was logical, his thought content was normal, his recent and remote memory were normal, and his attention and concentration were normal (Exhibits 6F, 10F, 13F, and 14F). Moreover, during his treatment at River Region and Family Care Associates, it was noted that [Marshall] was working and/or looking for work (Exhibits 2F, 3F, 6F, 8F, 9F, 10F, 12F, 13F, 14F, 15F, and 18F).

(R. 17-18.)

Upon review of the record and the hearing decision, the Court is able to discern that the ALJ fully considered the prior administrative medical findings in determining the RFC and finds the ALJ clearly evaluated the consistency and supportability of these prior administrative medical findings as required under 20 C.F.R. § 416.920c(b)(3).[6]

---

[6] In this appeal, Marshall did not challenge the consistency or supportability finding of the ALJ concerning the prior administrative medical findings.

The Court is not persuaded by Marshall's argument that the ALJ "mischaracterized" these prior administrative medical findings. (Doc. No. 9 at 10-12.) Even assuming such mischaracterization occurred, the Court further finds that such error does not warrant remand because the error is harmless. Marshall bears the burden of proving the ALJ's error is harmful and he has failed to satisfy his burden. *See Senn v. Colvin*, No. 3:11-CV-467-WKW, 2014 WL 4655432, at *2 (M.D. Ala. Sept. 16, 2014) (citations omitted); *Anderson v. Kijakazi*, No 1:20-cv-865-JTA, 2022 WL 3650619, at *4 (M.D. Ala. Aug. 24, 2022) (it is plaintiff's burden to show harmful error) (citation omitted). Requiring the ALJ to restate the opinions of Dr. Hinton or Dr. Park, without any "mischaracterizations," would not change the ALJ's RFC or ultimate decision. Both Dr. Hinton and Dr. Park opined that Marshall had "moderate" or "not significantly limited" limitations in their Mental Residual Functional Capacity evaluations; neither opined that Marshall had "marked" or "extreme" limitations. Furthermore, the ALJ generally incorporated the stronger – and thus more favorable –limitations recommended by the state agency medical consultants into his decision. For example, Dr. Pack opined that Marshall's contact with co-workers, supervisors, and the general public "should be casual and non-confrontational[,]" whereas Dr. Hinton opined that Marshall "would not be able to perform work which requires frequent interaction with the general public … [but, he] can tolerate non-intense interaction with coworkers, supervisors, and the public." (R. 66, 74.) In his RFC, the ALJ limited Marshall to *occasional* interaction "with coworkers and the public in work situations" which comports with Dr. Hinton's opinion. (R. 14.) Marshall thus has suffered no prejudice as a result of any mischaracterization error. *See Cooper v. Astrue*, 373 F. App'x 961, 962

(11th Cir. 2010) ("Errors may be harmless if they do not prejudice the claimant.") (citation omitted). Hence, any failure by the ALJ in characterizing the prior administrative medical findings does not warrant remand. *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) ("We have also declined to remand for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision.") (citations omitted).

Marshall further argues that since the ALJ's RFC "does not limit interactions with supervisors," as opined by Dr. Hinton, "the ALJ failed to build an accurate and logical bridge between his decision not to limit interactions with supervisors and the medical evidence in the record[.]" (Doc. No. 9 at 13.) Contrary to Marshall's assertion, the ALJ is not obligated to "bridge" every piece of evidence with his decision. *See Lecroy v. Comm'r of Soc. Sec.*, No. 23-11883, 2024 WL 1249165, *3 (11th Cir. 2024) ("Even still, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision … is not a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered [the claimant's] medical condition as a whole." ) (citing *Dyer*, 395 F.3d at 1211) (internal quotations and brackets omitted). In this case, the ALJ's hearing decision does not prevent meaningful judicial review.

Furthermore, contrary to Marshall's assertions, the regulations do not require the ALJ to adopt in the RFC every part of a prior administrative medical finding that he finds persuasive. *Rivera Misla v. Comm'r of Soc. Sec.*, No. 6:20-CV-1076-DCI, 2021 WL 2417084, at *2 (M.D. Fla. June 14, 2021) ("[A]n ALJ need not adopt every part of an

opinion that the ALJ finds persuasive.") (citing 20 C.F.R. § 404.1520c(a)). The ALJ clearly did not incorporate all of Dr. Hinton's limitations and was not required to do so.

Finally, Marshall has failed to satisfy his burden of demonstrating that the ALJ's RFC decision is not supported by substantial evidence. *See Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports [his] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion."). The ALJ's decision indicates the ALJ considered the medical evidence of record regarding Marshall's impairments, singly and in combination, in fashioning his RFC; the ALJ thoroughly summarized the medical record, including Marshall's hospitalizations, Marshall's medication management, Marshall's therapy and the conservative treatment of Marshall's physical injuries; the ALJ considered Marshall's reports that Marshall can handle his personal care needs and finances; and the ALJ considered the normal findings provided in many of the office visits. (R. 13-18.) The ALJ also discussed how the notes from the medical visits indicate that Marshall was attempting to find work in March and July 2021, and in July 2022 Marshall reported he was working in a job that required him to travel. (R. 15.) Accordingly, substantial evidence in the medical record supports the ALJ's conclusion. (R. 60-76, 251-262, 333-464, 465-781, 785-838, 844-875, 880-892.) The Court finds no reversible error.

C.     Assessment of Dr. Kirkland's Opinion and Records

Marshall contends the ALJ failed to develop the record by not obtaining Dr. Kirkland's treatment records. (Doc. No. 9 at 5.) He contends the ALJ should have obtained

Dr. Kirkland's treatment records, rather than simply rejecting Dr. Kirkland's medical opinion due to the absence of the records. (*Id*. at 18.) He also contends there is nothing in the ALJ's analysis that explains how the ALJ considered the supportability factor when evaluating Dr. Kirkland's opinion. (*Id*.) Marshall concludes that a proper evaluation of Dr. Kirkland's opinion would establish that he is disabled. (*Id*. at 21.)

The Commissioner responds that the ALJ properly determined Dr. Kirkland's opinion was not persuasive. (Doc. No. 14 at 8-9.) The Commissioner also argues the ALJ was not required to obtain Dr. Kirkland's treatment records because Marshall did not request them, and the record was sufficient for the ALJ to make an informed decision. (*Id*. at 11-12.) The Court agrees.

Dr. Kirkland, who is a licensed psychologist, furnished an undated Psychological Services Summary for Marshall.[7] (R. 783-784.) Dr. Kirkland stated that Marshall received regular therapy services at his office, from April 2016 to June 2017, to treat moderate severe anxiety, insomnia, occasional mild mania, and depression. (R. 783.) According to Dr. Kirkland, Marshall made progress and self-discontinued treatment in June 2017. (R.783.) Dr. Kirkland reported that he treated Marshall later in June 2020, after Marshall had been experiencing symptoms of moderate to severe mania. (R. 783.) Marshall received inpatient treatment at Crossbridge Behavioral for severe mania and then, after being discharged, resumed individual therapy services with Dr. Kirkland for treatment of "Bipolar I Disorder, Most Recent Episode Manic, Severe with Psychotic Features, and

---

[7] The Court notes that this Summary is furnished in the record as Exhibit 7F and Exhibit 19F. (R. 782-784, 893-894.)

Generalized Anxiety." (R. 783.) In July 2020, Marshall attempted suicide and was hospitalized for several weeks and then transported to an inpatient treatment facility. (R. 783.) After being discharged from the inpatient treatment facility, Marshall started receiving individual therapy "weekly to every other week" from Dr. Kirkland. (R. 783.) Dr. Kirkland stated,

> It is my opinion that, due to his symptoms of mania and anxiety, which include periods of unpredictable and impulsive behavior, with irritability and poor stress management, Mr. Marshall cannot reliably obtain and/or maintain consistent full-time employment. He is considered moderately to markedly impaired with respect to concentration, pace, and persistence. He is considered moderately to markedly impaired with respect to responding to coworkers, supervisors, customers, and/or work pressures. Long-term outpatient mental health treatment, with both psychology and psychiatry services, are indicated and recommended.

(R. 783.) No other documents or records from Dr. Kirkland are included in the medical record.

In the hearing decision, the ALJ addressed Dr. Kirkland's opinion and found it unsupported and inconsistent with the medical record. (R. 15.) The ALJ stated,

> There is no evidence of any treatment records from Dr. Kirkland, and his opinion is inconsistent with the extensive treatment records (September 15, 2020 through October 24, 2022) from River Region Psychiatry Associates (River Region). As state above, during [Marshall's] treatment at River Region, his examinations repeatedly showed that his mood and affect were appropriate, his thought process was logical, his thought content was normal, his recent and remote memory were normal, his attention and concentration were normal, and there was no psychosis (Exhibits 6F, 10F, 13F, and 14F). Thus, the undersigned finds Dr. Kirkland's opinion unpersuasive.

(R. 16.)

Here, the Court finds no reversible error. "The *more relevant the objective medical evidence* and supporting explanations *presented by a medical source are to support his or*

*her medical opinion(s)…*, *the more persuasive* the medical opinions … medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1) (emphasis added). As to supportability, Dr. Kirkland did not present any objective medical evidence to support his medical opinion, so it is not surprising or unreasonable that the ALJ did not find Dr. Kirkland's opinion to be unpersuasive. In addition, "[t]he more *consistent a medical opinion(s)* … is with the *evidence from other medical sources* and nonmedical sources in the claim, *the more persuasive* the medical opinion(s) … will be." *Id.* § 404.1520c(c)(2) (emphasis added). As to consistency, the ALJ noted how Dr. Kirkland's opinion compared to the extensive treatment records from River Region Psychiatry Associates and concluded that Dr. Kirkland's opinion was inconsistent with those treatment records. The ALJ's explanation, which incorporated the record as a whole and refers to other medical evidence as support, is sufficient for the Court to determine that his weighing of Dr. Kirkland's opinion is supported by substantial evidence. In the ALJ's decision, he determined that Dr. Kirkland's opinion was unsupported and inconsistent as required under 20 C.F.R. § 416.920c(b)(2). (R. 15.) Hence, the ALJ applied the proper legal standard when considering the persuasiveness of Dr. Kirkland's findings.

Moreover, the record demonstrates that substantial evidence supports the ALJ's finding that Dr. Kirkland's opinion was not persuasive. Treatment notes from River Region Psychiatry Associates show that Marshall's anxiety, depression and bipolar disorder were regulated by medicine, therapy, and a collaborative treatment plan. The notes indicate that on September 15, 2020, at Marshall's initial psychiatric evaluation, the "symptoms reported were consistent with the diagnosis [of anxiety and bipolar disorder] with evidence

of stability." (R. 755.) Marshall was counseled on interventions and medication options to treat his symptoms, and he "was in agreement with [the] treatment plan which [was developed] with in [sic] a collaborative manner." (R. 756.) On September 30, 2020, Marshall reported that he had "been doing well." (R. 757.) Marshall reported that his "mood is 'content'", he was coping well with his anxiety, denied irritability and panic, reported sleeping well and having a normal appetite, and denied having suicidal thoughts and hallucinations. (R. 758.) The notes indicate that the treatment plan was to increase Marshall's medication and monitor the medication for improvement. (R. 761.) Review of the evidence shows that Marshall's mental health symptoms were controlled by compliance with his treatment plan. The remaining treatment notes are unremarkable as Marshall's speech, mood and affect, thought processes, thought content, judgment, mental status, language skills, and awareness of current and past events were reported as normal. (R. 763-764, 769, 774, 778-779, 825-826, 831, 835-836, 854, 863, 867, 882.) He also consistently denied having thoughts of suicidal ideations, hallucinations, delusions or paranoid thinking. (R. 824, 829, 834, 836, 852, 854, 862, 866, 880, 886.) The records show that Marshall successfully continued to manage his mental conditions by medication management and therapy. (R. 765, 770, 775-776, 780-781, 827, 832, 837-838, 855-856, 865, 868-869.) In addition, medical records from other sources reveal that Marshall generally reported no depression or anxiety or hallucinations upon examination on multiple dates. (R. 808, 813, 866.) Consequently, the Court finds substantial evidence to support the ALJ's conclusion and concludes remand is unwarranted. *See Deerman v. Soc. Sec. Admin, Comm'r*, No. 22-11010, 2023 WL 5975245, at \*4 (11th Cir. 2023) ("Because there's

substantial evidence to support the administrative law judge's conclusions that Dr. Nichols's opinions were unpersuasive, we can't conclude that he erred in discrediting them."); *Esco v. Comm'r of Soc. Sec.*, No. 23-11777, 2024 WL 1156572, at *4 (11th Cir. March 18, 2024) ("We conclude that the weight the ALJ afforded to the medical opinions of Dr. Carter and Dr. Hayden was supported by substantial evidence, and we affirm in this respect.").

Furthermore, Marshall's assertion that the ALJ failed to fully develop the record misses the mark. "It is well-established that the ALJ has a basic duty to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d); *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995)). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Id.* (citing 20 C.F.R. § 416.912(a); 20 C.F.R. § 416.912(c)).

In addition, the Court finds no unfairness or clear prejudice to Marshall to justify a remand. Before the Court will remand a case for further development of the record, there must be a showing that the ALJ's failure to develop the record led to evidentiary gaps that resulted in unfairness or clear prejudice. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (citing *Brown v. Shalala*, 44 F.3d 931, 934–35 (11th Cir. 1995)). At a minimum, clear prejudice "requires a showing that the ALJ did not have all of the relevant evidence before him in the record ... or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (citation omitted). It appears the ALJ considered all the medical records that were furnished for the

relevant period, and Marshall does not challenge the accuracy of these records or the ALJ's analysis of these records.

Besides, at no time during the hearing before the ALJ did Marshall or his counsel request additional time to obtain Dr. Kirkland's treatment records, nor did they suggest that those records were needed to evaluate Marshall's claims. To the contrary, counsel for Marshall asserted during the hearing that she had reviewed all of the exhibits, she had no objection to the admission of the exhibits, and she was not "aware of any evidence related to the issue of disability [that was] yet to be submitted." (R. 45-46, 57.) Counsel for Marshall did not submit Dr. Kirkland's treatment records to the Appeals Council, nor did she argue that consideration of those records was warranted. (R. 1-6, 34-41, 181-183.) "Thus, any alleged error the ALJ may have made in not obtaining [Dr. Kirkland's] records was invited[,]" and is not worthy of discussion on appeal. *Larry v. Comm'r of Soc. Sec.*, 506 F. App'x 967, 969 (11th Cir. 2013) (citing *Ford ex. rel. Estate of Ford v. Garcia*, 289 F.3d 1283, 1293–94 (11th Cir. 2002); *Id.* at 969 n.3 (" 'It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party.' " (internal quotations and citations omitted)).

In the end, Marshall must bear the responsibility and consequences for the lack of records submitted by Dr. Kirkland, as it was his burden, not the ALJ's, to produce medical evidence supporting his claim for disability. *See Ellison*, 355 F.3d at 1276 ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."). Consequently, the Court finds no reversible error.

## VI.    CONCLUSION

After review of the administrative record, and considering all of the arguments, the Court finds the Commissioner's decision to deny Marshall disability is supported by substantial evidence and is in accordance with applicable law. Hence, it is ORDERED as follows:

1.      Marshall's motion for summary judgment (Doc. No. 9) is DENIED.

2.      The Commissioner's motion for summary judgment (Doc. No. 14) is GRANTED.

3.      The decision of the Commissioner is AFFIRMED.

A separate judgment will issue.

DONE this 23rd day of September, 2024.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE